UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAVID A. ROURKE | : |
| | : |
| v. | :    C.A. No. 09-010S |
| | : |
| STATE OF RHODE ISLAND | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 40) (the "Motion") filed by the State of Rhode Island.[1] Plaintiff objected to the Motion. (Document No. 41). Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Upon reviewing the Motion and Objection, the Court determined that no hearing was necessary to resolve the Motion, but Ordered the State to file a supplemental memorandum of law addressing Plaintiff's claims concerning the retroactive application of a State regulation to him. The State filed its Supplemental Memorandum on October 5, 2009. (Document No. 63). Plaintiff filed several documents in response to the Supplemental Memorandum. (Document Nos. 65, 66, 67, 68, 69, 70, 71). After reviewing the parties' submissions and considering relevant legal research, this Court recommends that the State's Motion to Dismiss (Document No. 40) be GRANTED and that Plaintiff's Complaint be DISMISSED.

---

[1] On July 29, 2009, the State filed its "First Amended Motion to Dismiss." (Document No. 49). The Court reviewed the Amended Motion to Dismiss, but did not rely upon the new information cited in footnote number 2. Accordingly, the Court will treat the Motion as a Motion to Amend, and it is DENIED as moot.

**Facts**

In 1978, Plaintiff entered a plea of *nolo contendere* to charges of second degree murder and robbery. In 1984, his sentence was reduced to fifteen years to serve, five years' suspended and five years' probation. Plaintiff filed his Complaint on January 8, 2009 and his Amended Complaint on April 13, 2009. In his Amended Complaint, Plaintiff alleges that his state court sentence was incorrectly recorded by the Attorney General's Office following his plea, and that he has suffered stress and deteriorating health due to the mental distress following the incorrect recording of his sentence. He brings his claims under 42 U.S.C. § 1983. He also notes that he was honorably discharged from the military, and alleges that he will not be permitted to be buried in the Rhode Island Veterans Memorial Cemetery because laws have been passed since his *nolo* plea which prohibit him from being buried in a Veterans Cemetery.

**Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief

beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "Unverifiable conclusions, not supported by the stated facts, deserve no deference." Ducally v. Rhode Island Dep't. of Corr.,160 F. Supp. 2d 220, 225-226 (D.R.I. 2001) (citation omitted). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559).

**Discussion**

    **A.    Eighth Amendment Claim**

Plaintiff's first claim is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Plaintiff brings his claim under 42 U.S.C. § 1983 and argues that the State incorrectly recorded his sentence following his plea deal, causing him mental and emotional distress. Plaintiff asserts that in 1984 his sentence for murder and robbery was reduced to fifteen years to serve, five years' suspended and five years' probation. He alleges that the State incorrectly recorded the sentence as thirty years for the murder charge and ten years for the robbery charge. Plaintiff initially raised this claim in the Rhode Island Superior Court in 2007. The Superior Court rejected Plaintiff's challenge in a written decision issued in December 2007, indicating that the recording of Plaintiff's sentence had already been corrected. (Document No. 40-3). In connection with that case, Plaintiff submitted a copy of his "Criminal History Record" from the Rhode Island Attorney General dated February 14, 2001 which contained the incorrect sentence. See Document No. 5 at 20. Moreover, his Amended Complaint indicates that "in 2002" he was still "serving on paper the 30 year sentence." There is no allegation that any mistake as to recording Plaintiff's sentence resulted in him serving any "extra" time in prison.

Even if the Court credited Plaintiff's assertions and assumed he had an otherwise cognizable Section 1983 claim, the claim must fail because the applicable statute of limitations under 42 U.S.C. § 1983 is three years. See R.I. Gen. Laws § 9-1-14; Ferreira v. City of Pawtucket, 365 F. Supp. 2d 215, 216 (D.R.I. 2004). Therefore, Plaintiff's § 1983 claim is untimely. According to Plaintiff's own submissions and concessions, he accessed and printed a copy of his Criminal History as early as 2001, which indicates he was aware of the error on his Criminal History in 2001. Additionally, in his Amended Complaint, he indicates that he was aware of the error in 2002. Even assuming, therefore, that Plaintiff did not learn of the error until 2002, the claim is still untimely. Because Plaintiff had notice of the error and it was previously corrected, Plaintiff is not entitled to any relief on this time-barred claim. Even if timely, Plaintiff's claims of emotional harm due to an incorrectly recorded sentence fall far short of the "unnecessary and wanton infliction of pain" required to mount an Eighth Amendment claim. Ducally, 160 F. Supp. 2d at 226 ("[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.") (citation omitted).

**B.    Veterans Cemetery Claim**

Plaintiff's second claim is that after entering into the plea deal, a Rhode Island Regulation was enacted that states that "[a]ny person convicted of a crime...the maximum penalty for which...equals or exceeds 15 years imprisonment, is not eligible for burial in the Rhode Island Veterans Memorial Cemetery." See R.I. Code Reg. 15 070 003 and Document No. 40-3 at 6. Plaintiff does not state a specific basis for federal jurisdiction over this claim. Instead, he simply states, "retroactive imposition of new laws and more punishments and consequences after the written plea bargain agreement can't possibly be legal, or constitutional...." (Document No. 25 at 3).

According to R.I. Gen. Laws § 11-23-2, the maximum penalty for the crime of second degree murder is life imprisonment. Accordingly, regardless of the actual time Plaintiff was sentenced to serve, he is not eligible for burial at the Veterans Cemetery because the maximum penalty is life imprisonment.

Although Plaintiff does not state a specific basis for federal court subject matter jurisdiction as required by Rule 8(a), Fed. R. Civ. P., the Court, in deference to his pro se status, interprets Plaintiff's claim to be that the Rhode Island Regulation violates the *Ex Post Facto* Clause, U.S. Const. Art. I, § 10 and/or that certain unlawful negative consequences have followed his decision to enter into a plea agreement. The Court addresses each of these two potential arguments in turn.

### 1.   Violation of the *Ex Post Facto* Clause

The *Ex Post Facto* Clause of the United States Constitution "forbids the application of any law or rule that increases punishment for pre-existing conduct." United States v. Ditomasso, 552 F. Supp. 2d 233, 240 (D.R.I. 2008) (citation omitted). Although Plaintiff does not specifically allege an *Ex Post Facto* Clause violation claim, the Court liberally construes it as such and will analyze the claim accordingly.

In this matter, the Court ordered the State to file a supplemental memorandum concerning the application of R.I. Code Reg. 15 070 003 to Plaintiff. The State responded by providing a detailed history of the regulation from 1975 through the present. Most notably, the State provided the Court with a certified copy of the disputed Regulation as it existed in 1975, prior to the entry of Plaintiff's *nolo* plea. (Document No. 63-7). In 1975, the Regulation contained the same prohibition on burial of convicted felons that exists in the version that is in effect today. The 1975 version of the Regulation stated that, "[a]ny person convicted of a crime...the maximum penalty for which

equals or exceeds 15 years' imprisonment, is not eligible for burial in the Rhode Island Veterans Cemetery." (Document No. 63-7 at 7). Because the prohibition on burial that impacts Plaintiff was in effect prior to his plea of *nolo*, he cannot state a claim based on the fact that the regulation was applied retroactively to him. For this reason, his *Ex Post Facto* Clause claim fails.

However, even assuming the applicable Regulation was changed after his plea, his claims would still fail. The First Circuit Court of Appeals recently noted that an *Ex Post Facto* claim involves a two-part inquiry. First, the Court must analyze whether the law being applied to the plaintiff "is a civil, regulatory measure within the meaning of the caselaw, or whether it is punitive." Simmons v. Galvin, 575 F.3d 24, 43 (1st Cir. 2009). Second, "even if the legislature intended to deem a particular law 'civil,' courts must further inquire whether 'the statutory scheme was so punitive either in purpose or effect as to negate that intention.'" Id. at 44 (citations omitted). As to the first part of the inquiry, the Regulation at issue in this case is a regulatory measure, not intended to punish, but instead, a "restriction of the individual [that] comes about as a relevant incident to a regulation of a present situation." Id. (citing De Veau v. Braisted, 363 U.S. 144, 160 (1960)). There is no language in the Regulation indicating that the provision is penal, and the regulation appears in a civil regulatory code. See id. "'The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.'" Id. (quoting Smith v. Doe, 538 U.S. 84, 103 (2003)). The primary regulatory intent in enacting this particular regulation was plainly to preserve the sanctity of the Rhode Island Veterans Memorial Cemetery for all honored there and not to penalize those excluded.

Next, the Court turns to the second factor, whether, despite the regulatory intent, the "purpose or effect" of the regulation is so punitive as to negate the permissible regulatory intent. The First Circuit Court of Appeals stated that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Simmons, 575 F.3d at 44. (citations omitted). In this case, there is no proof to override the apparent regulatory intent. Accordingly, even if the Court considered the merits of the *Ex Post Facto* Clause claim, Plaintiff would not prevail.

    **2.**    **Additional Negative Consequences of His *Nolo* Plea**

The second potential claim is that Plaintiff is suffering additional negative consequences of a previous conviction. Although previous litigants have attempted to bring forth similar claims in the context of a petition for writ of habeas corpus, such efforts have been unsuccessful. See, e.g., Lefkowitz v. Fair, 816 F.2d 17, 18 (1st Cir. 1987) ("[a]dverse occupational and employment consequences are a frequent aftermath of virtually any felony conviction. Government regulation, in the nature of the imposition of civil disabilities-say, loss of voting rights or disqualification from obtaining a gun permit-often follows a defendant long after his sentence has been served.") Because there is no independent justiciable federal claim, I recommend that the Court dismiss Plaintiff's claim regarding the loss of his eligibility for a veteran's burial.

    **C.**    **Plaintiff's Motion to Default the Veterans Administration**

Finally, Plaintiff has moved that Default be entered against the Veterans Administration because it failed to answer this case. (Document No. 47). Although Plaintiff is correct that he served the Veterans Administration with a copy of his lawsuit, he did not name it as a Defendant in his Amended Complaint, and the Amended Complaint does not contain any claims for relief against it.

Thus, the Court assumes that the Veterans Administration did not answer the Complaint because there were no claims against it which required its answer. Since Plaintiff's Amended Complaint does not state any claims against the Veterans Administration, I recommend that Plaintiff's Motion for Default (Document No. 47) be DENIED.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Default (Document No. 47) be DENIED and that the State's Motion to Dismiss (Document No. 40) be GRANTED. I also recommend that the Court direct the Clerk to enter final judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 29, 2009